these cases this morning. And we have four cases that are scheduled for oral argument. The first is United States v. Annamalai. I hope I'm pronouncing that correctly. And I see that Ms. Webster is here for the appellate. And Mr. Cashall is here for the government. Good morning. Well, Ms. Webster, are you ready to proceed? Good morning, and may it please the court. This is a case where the evidence was insufficient. The evidence was insufficient to convict Mr. Annamalai of at least 22 of the 34 counts against him. The evidence was insufficient to join those counts together into one indictment and one trial. The evidence was insufficient to prove the loss amount and other sentencing enhancements. And to cover for the lack of evidence, the government attacked his religion and the veracity of his religious authority, again, without evidence. You got a lot of issues here, and you only have 15 minutes. Now, we've not previously conferred, but I've identified three issues that I think have a more merit than the others. You only have 15 minutes. Can I tell you what they are? I would love for you to tell me what they are. Okay. And so the first is, you say that the government and the district court's consideration of religion at sentencing prejudiced the substantial rights of Mr. Annamalai. And I know we've said a few times before that religion is an impermissible sentencing factor. The Supreme Court said so in Zant v. Stevens. It's in the guidelines. Why don't you tell us why there was error there first? Sure. So at sentencing, the government explicitly argued that every penny that came into the Hindu Temple of Georgia was fraudulent, was fraud, and that somehow Mr. Annamalai or Annamalai had defrauded every person who had ever come into the temple. That's not what was charged in the indictment. The indictment only charged Mr. Annamalai with specific counts of fraud. Specifically, as to the bank fraud, Mr. Annamalai accepted credit card payment for the services that the temple provided. And then for a very small percentage of the total credit card charges, there were some disputes as to whether, or the evidence at trial was that he had impermissibly recharged those cards. Yeah. But what I'm concerned about is that at the sentencing hearing, because I'm going to ask the government about this when they come up here. When imposing the sentence, the court said his holiness is a joke to call him that. He's not holy at all. He's not a holy man. And there are several comments that you argue in your brief that maybe the district court just went over the line. Why don't you tell us why you think that's the case? Well, I do think that went over the line. The district court clearly, and instead of just sentencing Mr. Annamalai on the basis of what was proved at trial, the district court determined that he was a fraud as a Hindu high priest, that he wasn't actually those things. And the district court had no evidence to do that and had no authority to determine that he was a fraud. And the fact that he said that he could determine that the entire amount of money that was paid into the temple indicates that he didn't believe in Mr. Annamalai's spiritual authority or spiritual beliefs, and that he did not believe that Mr. Annamalai had the right or the authority to profess those beliefs to other people. And that's plainly in contribution of the First Amendment. So no religion is what this case is all about? I mean, he's charged with using the cloak of faith and spiritual authority to engage in the fraud. That's what the government said in its brief. So I don't think that that's accurate. He was charged with an indictment where specific acts of fraud. So we're certainly not contending that someone who is in a religious position of authority can't be charged with crimes of fraud. But what we are contending is that the government can't come into trial and argue, or not sentencing, and argue that his entire faith is a fraud and that his entire religious authority is illegitimate. And that's what they did, we would argue, at trial and at sentencing. And the district court made these comments at sentencing that reflect that. It's the one that you just mentioned about that it's a joke to call him a fraud. It's the comment about that the entire temple was a fraud and so that every penny that came into the temple was a fraud. All of those comments are plainly indicative of what the district court considered. And that is that Mr. Anomaly had no religious authority, did not truly believe in the faith that he espoused, and that he was a fraud. Our contention is that's illegitimate. Ms. Webster, in your briefing, you argue that the sentence was disproportionately high because the court below improperly considered the religion of your client. But what evidence do you have, what direct evidence do you have, that the religion was the problem of the calculation of the sentence? Well, I think it's two, I would point to two different facts. One are the comments that we were just discussing that the district court made. I think those comments are plainly indicative of the court's position. But in addition, the district court imposed several different enhancements that were based on his religion. Specifically, I can think of at least one where he was given, I think, a two-level enhancement for misrepresenting his authority as on behalf of a religious organization. He wasn't misrepresenting that he was acting on behalf of a religious organization. That's only true if you don't believe that he's a legitimate Hindu high priest or that he has no religious beliefs. The district court also imposed an abuse of trust enhancement based on a similar theory. And so all of those factors lead up to what we contend is an impermissibly high sentence. Go ahead, go ahead. One of the other issues that you raise in the brief is whether or not there was sufficient evidence for some of the bankruptcy fraud convictions. My understanding from reading both sets of brief is that there were at least some counts where there was money destined to or promised to the initial temple that were then deposited into the second temple's account. Is that correct? With a couple of accounts? I don't think that's correct, Your Honor. There weren't checks made out to the first temple that got deposited into the second temple's account? There was one check that was made out to the Hindu Temple of Georgia, but I think it's important to note a couple of things about that. First is that the check was actually issued in January of 2010, which is several months or five months after the temple declared bankruptcy, and two months after the temple was fully shut down and could not operate. But was that for services rendered before the bankruptcy and before the shutdown or? The government didn't present any evidence as to the circumstances that the check was issued. And so we have no, there's no evidence in the record to support the fact that it was based on services that were rendered prior to the bankruptcy petition being filed. And I think that's sort of a stretch to argue that because under 152 section 1, the government would have to show that it was based on services that were rendered prior to the filing of the bankruptcy petition way back in August. So the idea that someone was paying for services to the Hindu Temple that were committed or that were provided in August or earlier in January of 2010, I don't think is the most logical inference to make from that. One more question. Can you give me the best scenario out of those bankruptcy fraud convictions where the money, the property that was involved clearly belonged to the successor temple, the second temple and not the first? The best case you have? The best? The best count. The best count for your clients from your client's perspective where the evidence in your view was clearly for services that were done at the second temple well after the first temple shut down, etc. So every other count besides the count that involved the check, and we still dispute the check, but every other count involved credit card receipts being deposited into the Shiva Vishnu account. At trial, there's evidence that none of the merchant services deposits into the Shiva Vishnu account were proceeds that were intended for the Hindu Temple. All of those were intended for the Shiva Vishnu Temple and therefore they're not bankruptcy fraud under section 152.1. I think an important thing to note is the distinction between 152 subsection 1 and the other subsections of 152. So the government in its brief has responded or pointed to a variety of different evidence, but that evidence doesn't go to section 152 subsection 1, which involves the property of the bankruptcy estate. Anything that was done after the bankruptcy petition was filed or, for example, diverting the mail, those are things that may or may not be relevant to, for example, subsection 152 subsection 7 and 9. But it's not relevant to 152.1, which is what Mr. Anamaya was charged under. So the evidence that they presented doesn't establish that Mr. Anamaya is guilty of the crime that he was charged with in the indictment as to the bankruptcy fraud. You also say that the evidence was insufficient to convict him of, what is it, a 1071 offense conspiracy to harbor and conceal a fugitive? No, you're not arguing that he has the substantive offense has to be proven in order for him to be convicted of conspiracy, though, right? No, may I answer? No, we're not arguing that the government had to prove that he committed the substantive offense. But what we are arguing is that the government had to allege that the object of the offense was unlawful. And so the agreement that, to the extent that there was an agreement between Mr. Anamaya and his wife, was that they were going to tell the co-defendant to use cash. And that doesn't rise to the level of concealing or harboring as you define concealing or harboring. Other circuits have generally defined that to require some form of physical support. So here, even if the scheme was executed fully, there was no form of physical support. Mr. Chinathambi, the co-defendant, was not going to be concealed or harbored. He may have fled the country, but that's a different subsection that was not, or a different statute that was not charged in the indictment. And so the unlawful objective was not proven, or alleged property. I see you've reserved some time for rebuttal argument. Thank you, Ms. Webster. We'll hear from the government. Mr. Cashall. Thank you. Good morning, and may it please the Court. I'd like to start by addressing, well, I'll address the issues that were brought up in order, starting with the religion matter. Your Honors, I think it's important to start with clarifying what defense counsel has conceded in her briefing, which is that they're not alleging that the government is biased against practitioners of the Hindu religion, and they're not alleging that the defendant was prosecuted because he is a Hindu. So setting aside the entire, all the trial discussion and — Well, the only thing I'm concerned about, at least from my own perspective, is whether at sentencing the Court injected religion or based the sentence in part on his religion. Your Honor, I think based on the record, the district court judge evaluated this defendant based on his history and characteristics. The Court observed this defendant for a two-week trial, heard him testify twice during the trial and again at sentencing, and he saw time and time again that this defendant was a total fraud. The defendant had lied. He tried to obstruct justice. He gave outrageous testimony when he testified during the trial, and taking that and combining it with the nature of this case — and still be a legitimate priest, can he? Yes, Your Honor, absolutely. And I don't think that the district court's comments, the statements about the defendant being a total fraud, I think that those comments are about the fact that the defendant's business, the company that he ran, the Hindu temple that sold religious services, that there was a scheme in place at that temple in which the defendant systematically submitted false documents to financial institutions, in which he threatened victims who disputed those false documents, and in which he then sued those victims in instances where they fought back even further. I understand that, but when the Court says every penny that ever came into the temple, all $10 million was gained fraudulently, well, that isn't true, is it? Some of it was obtained fraudulently, but not every penny of the $10 million was gained fraudulently, and isn't that an implication that, you know, that that's an impermissible consideration of sentencing? Your Honor, I don't believe so, because the evidence that was presented at trial showed that the temple was being run as a business that systematically defrauded individuals. So while it — Everybody wasn't defrauded, though. Everybody that paid money for spiritual and healing services was not defrauded. That's correct, Your Honor. And I don't think that those comments were set forth with the intention of holding the defendant responsible for every single penny. In fact, the Court did not do that when it got to the loss amount. However, the statement is being made in the sense that the defendant's scheme as a whole, and when you review the dispute documents that were supplied in this case, the exhibits that were — the evidence that was presented in this case, government's exhibits 220, 220, 232, and 268, those types of dispute files, when you see the types of things that this defendant wrote in those dispute files about the victims in this case, when he submitted those to the credit card companies, it does become clear that this was a total scam. The defendant had recorded the victims and would submit recordings. The defendant would send them empty packages with — just to seek their certified signatures so that he could submit it to bank institutions in order to say that they, in fact, received services when they had not and when — that they had agreed to services when they had not. This was a very complex and sophisticated scheme, and there were photos taken that were at the location of the Hindu temple, the 390 series of photos from the trial, government's exhibits 390A through — I'm not sure where it stops, but it doubles up to AA, BB, etc. And in some of those photographs, what you will see is there were packages, one after the other, inside the Hindu temple office. There were folders and envelopes that contained certified mailings, one after the other, after scheme in this case was all about. And I believe that's what inspired the court to make those comments that the Hindu temple was actually just a mechanism for this defendant in order to fraudulently obtain money from victims. And, Your Honor, I do think that there's one other — on the religion matter, I do think that the cases that defense counsel cited don't support their position. For example, the Baker case talks about an instance where the judge said he had no thought whatever about his victims, and those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests. So in that case, the appellate court did not agree with the district court incorporating its own sense of religiosity, and that is not present here. What we're seeing here is what is permitted, which is for the district court judge to be the embodiment of public condemnation and social outrage. And in addition to judging this defendant based on his history and characteristics, the district court did not say that the rituals were a fraud. The district court did not say that the defendant's religious beliefs were a fraud. And the district court did not say that his own sense of religiosity is being harmed by the defendant. And for that reason, I do not believe that there was an error at sentencing on the religion matter. Can I ask you a question about the bankruptcy fraud counts? Yes, Judge. Weren't a fair number of those charges predicated upon payments made well after the first temple went into bankruptcy and shut down and for services that could not have been provided by that temple? Your Honor, I think that I will say if you accept the premise that the first temple and the second temple are different, there were payments that were made after the petition had been filed and after the trustee had taken control of the Hindu temple. So if we accept those prerequisites, then yes, Your Honor, that is correct. Then how can that be property of the estate? Your Honor, it is not property of the estate. Then how can it be bankruptcy fraud under this subsection? It is bankruptcy, or excuse me, it is property of the estate. It is bankruptcy fraud under United States v. Dennis. I'm sorry, I misspoke, Your Honor. Under United States v. Dennis, this Court has said that the question of what constitutes property of the estate is a question for the jury. Sure, but there are lots of questions for the jury, and yet appellate courts sometimes say that a determination by the jury needs to be overturned because the evidence was insufficient as a matter of law. So that gets you partway there, but not the whole way there. That's correct, Your Honor. I do think that there are some other aspects of this that need to be highlighted based on the evidence, that the two entities were in fact one in the same. That's what the government argued at trial, and that's essentially the theory under which this defendant was convicted. But what does that mean that they're one in the same? I mean, we respect the corporate form for bankruptcy purposes, and so when an entity, not a person, when an entity goes into bankruptcy, the people who run the entity are entitled to start a new company providing same or similar services. That doesn't mean that the new entity is a continuation of the old for purposes of property of the estate, right? That is correct, Your Honor, in instances where it is in fact a new entity, and the And that did not occur in this case. In this case, the defendant never respected the corporate formalities. In fact, there was a photograph of the temple from the very outset that the front of the temple, the awning on the temple said Hindu Temple of Georgia, parentheses, also known as the Shiva Vishnu Temple. This temple had always operated under multiple names, and all those different corporate formalities were commingled, as described in pages 36 through 39. What case lets you obtain a conviction under Section 152.1 based upon a piercing of the corporate veil? I think United States v. Dennis provides for the jury to decide that these were one in the same. That's not my question. Under Georgia state law, which was examined and discussed, and in fact, the court, excuse me, the Was the jury instructed on piercing of the corporate veil? The jury was not instructed on that, Your Honor. Then how could the jury have made any finding that corporate formalities were not followed? The government argued that corporate formality. Doesn't matter what the government argued. If it's not in the jury instructions, how can the jury have been asked to make that determination, assuming it were sufficient? Well, in this instance, Judge, the defense counsel argued that they were one in the same, excuse me, that they were different and that exactly what Your Honor has presented here today. I thought the jury was instructed on property of the estate and nothing else. And you're telling me today, I think that the reason that those counts should be, and I know there's one that's different because it was a check made to the first temple. I understand that count. But you're telling me that the reason those other counts can be sustained is because there was no respect of the corporate form, but that issue wasn't submitted to the jury. The jury was only asked to find whether or not the fraud occurred with respect to bank, to property that was belonging to the estate of the first temple. What am I missing? The, Judge, the instructions also contained an additional sentence that the defense wanted to be put in. And that sentence said in substance that an individual may go and work for a new corporation and may go and work for themselves in the future and earn more money and earn money however they wish. And that is not property of the estate. Now, that is what the defendant argued at trial, that he was in fact doing something new. Okay. But again, I go back to the same thing and I won't bother you anymore after I say this. What makes the property earned legitimately or illegitimately by the second temple property of the estate of the first temple? The first temple and the second temple, Your Honor, were one in the same. And property that is acquired or earned through the property of the estate, so money that is earned after the estate has been created, that money is also considered property of the estate. So wait, wait, wait, say that again? Money that is earned or acquired through pre-petition assets like the goodwill associated with the name Hindu Temple of Georgia, the phone numbers that were used by the Hindu Temple of Georgia, the merchant services accounts, which were under the control of the Hindu at the time of the declaration of bankruptcy, which I think, Your Honor, would also flip back a number of those convictions because those, if we were to take Your Honor's view that post-petition assets, to take the view that they're not one in the same, at least Well, no, my point is that they have to be different, right? Or they can't be different for you to get an affirmance on the convictions. They have to be the same, right? Yes, and that's what the jury found when it decided that this was all property of the estate through its own fact-finding. And we presented So this would have, if you had not discovered the fraud going on at the Second Temple for another 10 years, everything that Temple was still doing would have been property of the First Temple's estate because it's all just a continuation and there's no respect to the corporate forms. The First Temple lives on in perpetuity forever as long as the Second Temple is going. Is that an exaggeration? If the property, which it was, was property of the Hindu Temple of Georgia, then yes, that would be considered part of the fraud and it would have been So it never ends? Yes, Judge. If it had been concealed from the trustee and continued on into the future What do you mean concealed from the trustee? They're operating in the open. The, Your Honor, the transfer of the merchant services accounts, for example, that was done without the knowledge of the trustee. The diversion of the proceeds that would have gone to the Hindu Temple of Georgia, that was done, all of the actions identified on pages 36 to 39 of the governance briefing, all those instances were instances where the property, where the trustee was not made aware of what was going on with the Shiva Vishnu Temple and, in fact, didn't know that it was that were the property originally of the Hindu Temple of Georgia. So based on that, Your Honor, and based on the commingling of these two entities and the fact that they had the same employees, the same defendant, the same head leader, which was the defendant, the fact that they used the same, excuse me, that they diverted the Hindu Temple mail to a different PO box, the fact that they used the same merchant services accounts and the same email addresses and the same marketing materials, and they had the same names on the magazines and they had the same name on the storefront from the very beginning of the temple, it was always one and the same, Your Honor, and that's why it was property of the estate to begin with, and that's what was argued to the jury and that is what the jury decided was actually true, that it was one and the same. Attorney Giselle, let me ask you a minute about the money laundering. This Court has held in the past that the attempt to conceal money must be, quote, substantial, close quote. What evidence does the government have in this case that the attempt to steal was substantial? That the, Your Honor, in this case, the defendant hid his actions from the trustee, so that was concealment, a designed concealment from the trustee by using multiple entities, new bank accounts, he created a new corporate entity to try and cover his tracks, he didn't tell the trustee that he was continuing to operate the Hindu Temple of Georgia and continuing to obtain money from the Hindu Temple of Georgia, and on pages 36 through 39 of the government's briefing, it lays out the things that were concealed from the trustee during the bankruptcy, and all of those facts that show the concealment that occurred during the bankruptcy, those facts also show the design and intent by the defendant to conceal for purposes of money laundering, and that's what cases like United States v. Dennis tell us, and the other cases that were cited in our briefing, including the Blankenship case, which talks about an affirmative duty to disclose, which this defendant never did follow. This defendant hid his actions from the trustee, and he was running the same temple the entire time. How about the conspiracy to conceal or harbor a fugitive? And so if I go to the transcript, where am I going to find an agreement or an overt act in furtherance of this conspiracy? Was it the telephone call to his wife to tell, I can't pronounce his name, but the other person to use cash instead of a debit or a credit card? Is that it? No, Your Honor. There were additional things that were proven as overt acts, and the things that are listed in the indictment, well, I can walk through the overt acts. Starting on the day of the arrest, there was testimony from Agent Rod Roberts who testified that he had looked up Chinathambi's address, and it resolved to the Houston Hindu Temple address. That's on page 1359 of the trial transcript. And on that day, which was November 14th, the defendant, Animal Eye, was arrested, and Chinathambi was not found on that day. That's page 1362 of the transcript. So we've got one defendant arrested, the main defendant, and Chinathambi is still at large. Later during the trial, Agent Rod Coffin testified, and he testified about communications that occurred on the date of November 14th, which was the arrest date of Animal Eye, and the date that Chinathambi was not found. And on Government Exhibit 554 and pages 1396 through 1398 of the trial transcript, there's testimony about how there was a phone call at approximately 8.54 a.m. and 10.01 a.m., attempted phone calls from between, I should say, the defendant's wife, Parvati Sivanadian, and Chinathambi. And then later, Agent Coffin testifies about Government Exhibits 551, 552, 553, and 102. And all of those exhibits discuss an email that was sent about 5.20 p.m., and that's on pages 1399 through 1402 of the transcript. And those talk about an email between Defendant Chinathambi, another individual who is using the name Priest Rothenam, who… But Animal Eye, all he did was call his wife and tell him to tell the other person to use cash instead of a debit or credit card. Did he do anything else? The defendant, during the jail call, repeatedly told his wife to tell Shishmani, who is Chinathambi, not to use the debit card, and discusses Shishmani traveling, discusses talking to Shishmani, and Shishmani staying in hotels. And he does instruct them that he should not use the debit card. And that is an overt act, Your Honor. Does the government contend that the giving of advice is a physical act? Other circuits have held that there must be some physical act connected to this offense. Is the mere giving of advice to someone a physical act? Your Honor, I don't think we have to reach that question. And here's why. It's because the issue here is whether there was circumstantial evidence of an agreement between the parties, between Sivanadiyan, Chinathambi, and Defendant Animal Eye, in order to conceal and harbor Chinathambi. And that is separate and apart from what would be required under 1071 to prove a concealing or harboring charge. So in this case, the government presented an overt act, along with other overt acts, and they were more related to the defendant, Chinathambi's, hiding and attempted flight from the United States. But the key is that this defendant was part of that because he was talking about Defendant Chinathambi using cash and trying to avoid arrest. Use cash instead of a credit card. And then I'm looking at the Fifth Circuit's opinion in United States v. Stacey, and the Fifth Circuit says giving financial assistance to a fugitive or even making false statements to law enforcement officers regarding the whereabouts of a fugitive, that's insufficient to constitute harboring or concealing under Section 1071. Seems like that's more in Stacey than we have here. Your Honor, I do think these two cases are distinguishable. And perhaps Stacey is, there's more happening there than there is here based on the specific actions of Defendant Anamali at that time. However, I do think it's also important to understand the context in which Defendant Anamali and Defendant Chinathambi related to each other. Defendant Anamali instructed Defendant Chinathambi on where he would live and what he would do. And essentially, Chinathambi was a henchman of Anamali and reported to him. And Anamali, based on the trial evidence, was directing Chinathambi in all matters. So the fact that he was telling his wife to then tell Chinathambi to use cash, that was an instruction to try and hide that individual. And I also think it's important, Your Honors, to recognize that 1071 and 371, that one can conspire, they can try and conspire to hide that individual. And in fact, that's what their discussion is about in Government Exhibit 190 when they say he'll get caught, don't use debit card, or he'll get caught. That shows their intent. That shows that they are agreeing that he does not need, that they want to hide this individual from arrest. And that is what shows that there was sufficient evidence on that count, Your Honor. All right. I'm well over my time. I apologize. Thank you. Thank you, counsel. We'll hear again from Ms. Webster. I'll address briefly some of the points on the bankruptcy fraud issue before turning to the money laundering, if that's okay. Specifically, I would just like to note that every substantive count of bankruptcy fraud charged in the indictment happened well after the filing of the bankruptcy petition. So none of the counts occurred prior to the bankruptcy petition, and therefore, they cannot be property of the estate. Well, that's not necessarily true, right? Because you could have property gained after the bankruptcy petition is filed for services rendered before, and that would certainly be property of the estate, right? Yes, that's correct. It has to be either a property that exists at the time of the commencement or proceeds from the pre-petition assets. Here, there's no evidence that any of these counts involve pre-petition assets. And respectfully, Mr. Anamalia and the services that he provides are not assets of the Hindu Temple of Georgia. He's an individual person. He can go to a new corporation and provide new services. I'd just like to point out a few other facts. There was evidence at trial that changing the merchant services accounts did not result in any money that was intended for the Hindu Temple of Georgia to go to the Shiva Vishnu Temple. And also, the government conceded at trial that the merchant services accounts had, quote, nothing to do with the bankruptcy fraud. I think that's in Document 387 at 1278. The government referenced a few things, like that the phone numbers belonged to the Hindu Temple of Georgia. Again, I don't think that's what the evidence showed. The evidence showed that Mr. Anamalia, those are Mr. Anamalia's assets. And I think that phone numbers and things like that may be relevant to other subsections under 152, but not the one that he was charged with. So I'd like to turn to the money laundering issue. Because there's insufficient evidence on the bankruptcy fraud counts, the money laundering accounts have to fall based simply on that. Because in order to be convicted of money laundering, there have to be proceeds from a specified unlawful activity. Without bankruptcy fraud, there is no specified unlawful activity. And the money laundering, then there's insufficient evidence to find that Mr. Anamalia was guilty of money laundering. Aside from that issue as to the money laundering, there's also the issue that there was no evidence to conceal the transactions that were charged in the indictment. The indictment has three checks and five mortgage payments. The checks were made out to Mr. Anamalia on their face. The mortgage payments were checks that were paying for mortgages that he owned in his name. And that is clearly insufficient under this court's prior case law and under the Supreme Court's decisions to constitute concealment. It does not show that the purpose of the transactions, not just the effect, was to conceal them. Although we would also argue that there was no effect of concealing because the property belonged to is obvious from the face of the transactions. The other aspect of that is that I think is somewhat startling, is that when the government argues about bankruptcy fraud, it's all about the fact that the corporate formalities have been ignored and that Mr. Anamalia operates all three temples as one. But when we get to money laundering, the facts that they point out are that they are two separate corporations, that they're entirely separate and that the Shiva Vishnu temple is basically a third party account. And I don't think that the government can take contradictory positions, certainly in its own brief. I would also argue that the lack of evidence on the three sort of accounts that we have discussed, the bankruptcy fraud, the money laundering, and the conspiracy to conceal or harbor, is exactly why the improper joinder and the refusal to sever the counts of trial was so prejudicial. Because here, the jury didn't just hear about bank fraud, it heard about all the different counts. And that is why. But yet, the jury, after a very short period of deliberation, just four hours, convicted Mr. Anamalia on all 34 counts, despite the glaring insufficiency as to 22 of those counts. Thank you, counsel. And Ms. Webster, I see that you were appointed by the court to represent the appellate. The court thanks you for your service. Thank you. It's my pleasure.